IN THE DISTRICT COURT OF THE UNITED STATES
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | CR #:  2:02-1156 |
| Respondent | ) | |
| | ) | |
| vs. | ) | **ORDER AND OPINION** |
| | ) | |
| **PRESTON GATTIS, JR.** | ) | |
| Petitioner | ) | |

This matter is before this court pursuant to Petitioner's Motion to Vacate Sentence filed pursuant to Title 28, United States Code, Section 2255.

## PROCEDURAL HISTORY

On October 9, 2002, an indictment was filed against Petitioner ("Gattis") charging him with drug and gun violations. On February 14, 2003, Gattis was arrested and arraigned on those charges.

On September 9, 2003, a jury was selected, and on October 14, 2003, a jury trial commenced. On October 16, 2003, a jury verdict was reached finding Gattis guilty on all counts.

On November 7, 2003, Petitioner filed a Notice of Appeal with the Fourth Circuit.

On March 4, 2004, Gattis was sentenced to 420 months incarceration to be followed by an eight year term of supervised release.

On September 9, 2005, the Fourth Circuit Court of Appeals issued its opinion affirming all of the district court's rulings. On October 26, 2005, the Fourth Circuit issued its Judgment affirming the district court's decision.

On October 30, 2006, Petitioner filed the instant motion to vacate under Title 28, United States Code, Section 2255.

Gattis sets forth four claims for relief. First, Petitioner asserts that there was a lack of evidence to prove that he lived at 130 Deep Creek Trail and that any evidence gathered

from the search warrant at that address is "fruit of the poisonous tree." Next, Gattis argues that he never had "actual" possession of the guns found at 130 Deep Creek Trail. Thirdly, Petitioner makes an ineffective assistance of counsel claim asserting that his counsel failed to make numerous objections to evidence admitted by this court during his trial. Finally, Gattis asserts that the drugs charged in counts one through three of the indictment should not have been admitted because there was a break in the chain of custody.

## CLAIM ONE

Since Gattis is challenging the sufficiency of the evidence to support his conviction, he bears a heavy burden: after viewing the evidence in the light most favorable to the prosecution, could any rational trier of fact have found the essential elements of the crime beyond a reasonable doubt? *Jackson v Virginia*, 443 U.S. 307, 319 (1997) During the trial, ample evidence was presented that Gattis lived at 130 Deep Creek Trail. Considering the evidence under the *Jackson* standard, it is clear that the government produced credible evidence that Gattis lived at 130 Deep Creek Trail. (See Transcript at page 40, line 2-21) Gattis's phone calls were forwarded from his other residence at Trojan Road to the Deep Creek Trail telephone (Tr. 37, line 24-38 line 4; 220, line 17-221, line 17). Gattis also was a co-signer for the Deep Creek telephone (Tr. 222, line 16-22). The Land Rover that Gattis was identified as using was seen at the Deep Creek house (Tr. 40, line 3-8; 78, line 19). Officers followed Gattis from the Deep Creek house to one of the controlled buys (Tr. 42, line 1-11; 131, line 20). Gattis also admitted that he had built the back and front porches on the Deep Creek house (Tr. 49, line 12-24). When the search warrant was executed in the early morning hours of February 23, 2002, Gattis was found in the master bedroom of 130 Deep Creek Trail in the company of his girlfriend. Gattis's son and brother were also found in this house. Also found in the master bedroom along with Gattis were three pistols, two Glocks and one Ruger; one in the nightstand and two in a dresser drawer and a quantity of cocaine (Tr. 95, line 3-5). After being taken into custody, Gattis claimed that the drugs which were found in Deep Creek Trail were his and his alone (Tr. 52, lines 17-25; 143, lines 20-25; 184, lines 8-14).

In evaluating the sufficiency of the evidence, the jury verdict must be upheld if

there exists substantial evidence, including direct and circumstantial evidence, to support the verdict, viewing the evidence in the light most favorable to the government. *United States v Stewart*, 256 F.3d 231, 249 (4th Cir) It is clear from the record that there was sufficient evidence to establish that Petitioner resided at 130 Deep Creek Trail and that a rational trier of fact could arrive at the same conclusion.

### CLAIM TWO

Petitioner's arguments that he was never in actual possession of the firearms recovered from the residence and that they were not part of the drug trafficking crime are without merit. The law recognizes two types of possession: actual and constructive possession. Actual possession is not necessary to uphold a conviction for possession of a firearm; constructive possession is sufficient. *United States v Scott*, 424 F. 3d 431, 433-36 (4th Cir. 2005); *United States v Rusher*, 966 F. 2d 868, 878 (4th Cir. 1992). It is well established that constructive possession exists when a person exercises dominion or control over an item. *United States v Laughman*, 618 F 2d. 1067, 1077 (4th Cir. 1980). In order to prove constructive possession, the government must prove that the defendant voluntarily and intentionally had the power to exercise dominion over an item, in this case, firearms. In addition, "constructive possession may be proved by either direct or circumstantial evidence." *United States v Nelson*, 6 F. 2d 1049, 1053 (4th Cir. 1993). The jury decided that the government satisfied this burden at trial.

Petitioner's argument that there was no evidence to establish that the guns located at the residence had a connection to a drug trafficking crime is also without merit. A search warrant was issued for 130 Deep Creek Trail after several undercover buys of narcotics from Gattis had taken place. During that search, four firearms were located in the residence along with 146 grams of powder cocaine and 9.60 grams of crack cocaine. In addition, Gattis made several voluntary statements that admitting ownership of the contraband found during the search.

Any person who "during and in relation to any crime of violence or drug trafficking crime...uses or carries a firearm, or...in furtherance of any such crime, *possesses* a firearm" has committed an additional offense under Title 18, United States

code, Section 924(c)(1). In this case it was clear that Gattis was selling illegal narcotics-he was videotaped making three sales of drugs. When a search warrant was executed at the residence, illegal drugs and four firearms were found. Three of these guns and some of the drugs were found in the master bedroom where Gattis was sleeping. The jury correctly decided that Gattis was in constructive possession of the weapons located at the scene where drug trafficking crimes were taking place.

## **CLAIM THREE**

Under the facts of this case, Gattis's attorneys were faced with a Herculean task. Gattis was videotaped making three separate sales of illegal drugs to an undercover informant. These tapes were admitted into evidence and shown to the jury. While Gattis continually complains about his attorney's failure to object to certain evidence and to have a hearing on his suppression motion prior to trial, this court ruled on this motion during Gattis's trial. Gattis's attorneys posited his "chain of custody" argument after the court heard the government's witnesses. They were unsuccessful in that their arguments went to the weight of the evidence, not the admissibility thereof. The Fourth Circuit agreed with this court's ruling in its decision affirming Gattis's conviction.

In order to prevail on a claim of ineffective assistance of counsel, Gattis bears the burden of showing that (1) counsel's performance fell below an objective professional standard of reasonableness; and (2) that counsel's deficiencies prejudiced his defense. *Strickland v United States*, 466 U.S. 668, 687-92 (1984). When evaluating counsel's performance under the first prong of the *Strickland* test, this Court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 680. Further, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance..." *Id*. at 689. *See also*, *Matthews v Evatt*, 105 F. 3d 907, 918-21 (4th Cir. 1997); *Fields v Attorney General of Maryland*, 956 F.2d 1290, 1297-99 (4th Cir.), *cert. denied*, 506 U.S. 885 (1992). As the *Strickland* court observed:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining

counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was reasonable...[E]very effort [must] be made to eliminate the distorting effects of hindsight... *Id*. at 689.

In order to prevail on the second prong of *Strickland*, Petitioner "must show there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id* at 694. Both the Supreme Court and the Fourth Circuit have held that defendants bear the burden of proving prejudice, *Fields*, 956 F.2d at 1297, and if the defendant cannot meet this burden, then the performance prong of *Strickland* need not be considered. *Id*. at 1297. *See also*, *Strickland*, 466 U.S. at 697.

Petitioner has failed to show prejudice resulting from any alleged deficient performance of his attorney. Thus, even assuming *arguendo*, that trial counsel failed to object either deliberately or by way of neglect, and that this refusal rendered him deficient under the first prong of the *Strickland* test, Gattis's claim still fails. The second prong of *Strickland* requires Petitioner to show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052. This requires Gattis to demonstrate that there is a reasonable probability, "sufficient to undermine confidence in the outcome," that, absent the error, the result of the trial would have been different. Merely suggesting that counsel's alleged refusal or neglect to object to evidence or testimony may conceivably have had an effect on the trial's outcome is insufficient. *See id.* at 693-94, 104 S. Ct. 2052. Gattis's attorneys were not ineffective in their representation of a client who was caught on videotape making three hand-to-hand drug sales and thereafter arrested in his bed in constructive possession of drugs and weapons.

## CLAIM FOUR

Petitioner's final argument that there was a break in the chain of custody is also without merit. In *United States v Branch*, 970 F.2d 1368, 1370 (4th Cir. 1992) the court stated that "[b]efore admitting evidence for consideration by a jury, the district court must

determine whether its proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic." In the instant case, testimony was provided by the SLED chemist Jill Clark that the drug evidence came to her for analysis in a normal fashion. It was properly submitted in a drug drop box sealed in a BEST kit. Petitioner's argument that because the officer who located the drugs at the search labeled them powder and the SLED lab report stated that it tested a rock like substance does not indicate a break in the chain of custody.

In addition, the government does not need to establish a formal chain of custody. It is sufficient for the party offering the evidence to satisfy the trial court that the evidence is what it purports to be and has not been altered. *United States v Howard-Arias*, 679, F.2d 363, 365-66 (4th Cir. 1982). In Gattis's appeal, the Fourth Circuit concluded that the government sufficiently established a chain of custody for the drugs and upheld this court's admission of the drugs into evidence.

THEREFORE, Gattis's petition is DENIED.

AND IT IS SO ORDERED.

_____
David C. Norton
United States District Judge

Charleston, S.C.
February 15, 2007